IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| PRINCELLA LUCAS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MICHAEL O. LEAVITT, ) <br> SECRETARY OF THE DEPARTMENT OF ) <br> HEALTH and HUMAN SERVICES,, ) <br> ) <br> Defendant. ) | No. 06-0077-CV-W-DW |

**SUMMARY JUDGMENT ORDER**

Before the Court is Defendant's Motion for Summary Judgment. (Doc. 11). Plaintiff claims that Defendant Health and Human Services[1] discriminated against her (1) on the basis of race and age when she was assigned to the Data Management, Funding, and Technology Team ("Funding Team") and (2) discriminated against her on the basis of race she was not selected for two GS-101-13 Head Start and Youth Specialist positions.

Defendant argues that Plaintiff cannot present a genuine issue of fact to (1) whether her assignment to the Funding Team was an adverse employment action and (2) counter Defendant's legitimate nondiscriminatory reason for failing to select Plaintiff for the GS-13 Head State and Youth Specialist positions.

**I.    Facts**

Plaintiff is an African-American female who was born in 1934. Plaintiff has worked for the federal government for approximately 34 years in a variety of positions. Most recently, Plaintiff worked as a Head Start Youth Specialist ("HSYS") GS-12.

In January of 2001, two different HSYS GS-13 job openings came available. Plaintiff

---

[1] While this lawsuit is brought against Michael O. Levitt, it is in his capacity as Secretary of the Department of Health and Human Services. For clarity's sake, the Court will refer to the Defendant in this action as Health and Human Services.

applied for and made the best qualified lists for both openings. Both best qualified lists consisted of two black candidates and one white candidate. Plaintiff did not receive either of the promotions. In February of 2001, Linda Lewis, the Administration for Children and Families ("ACF") Region VII Administrator, selected Ms. Norred and Ms. Crabtree, the two white candidates, for the positions. Ms. Lewis did not, however, announce the chosen candidates until August 2002.

Plaintiff was told that she did not receive the promotions because, in her interviews, she failed to demonstrate sufficient knowledge of the PRISM Program. PRISM, Program Review Instrument for System Monitoring, has been ACF's sole program system guide since 1999 for evaluating or monitoring Head Start and Early Head Start programs. Defendant presented evidence that Plaintiff also was not hired because she was unable to explain basic Head Start and Early Head Start concepts. Plaintiff stated in her deposition that she was unable to describe the "four corners of Early Head Start."

Prior to June of 2001, all HSYSs, including Plaintiff, were responsible for all aspects of Head Start and Early Head Start programs administered by that office, including both funding and monitoring duties. In June of 2001, Thomas Mayer, Director of the Office of Community Operations ("OCO") restructured the HSYS staff by dividing it into two teams— the Monitoring, Partnerships, Training and Technical Assistance Team ("Monitoring Team") and the Funding Team.

Mr. Mayer invited the HSYS staff to state their team preference. Plaintiff submitted a memo requesting assignment to the Monitoring Team. Plaintiff stated that was capable of performing all the components of the Funding Team, and that they were part of her job description, but she preferred an assignment to the Monitoring Team as monitoring was her "strength."

In the end, Plaintiff was assigned to the Funding Team. The Funding Team was composed of seven black females, one hispanic male, one native american female, two white females and one black male. The Monitoring Team was composed of six white females, one white male, two black males and one black female. Plaintiff complained on July 3, 2002, that her assignment was a result of her age and race.

On October 25, 2002, Plaintiff formally filed her complaint alleging race discrimination.

In November of 2002, Plaintiff was notified that she was to be terminated for unacceptable performance. Plaintiff filed for Immediate Retirement shortly thereafter.

## II. Legal Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Issues of fact must be material to a resolution of the dispute between the parties; where the only disputed issues of fact are immaterial to the resolution of the legal issues, summary judgement is appropriate. Case v. ADT Automotive, 17 F. Supp. 2d 1077 (W.D. Mo. 1997) (citing Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992)).

In ruling on a motion for summary judgment, it is the court's obligation to view the facts in the light most favorable to the adverse party and to allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence. Anderson v. Liberty Lobby, 477 U.S. 242, 252-255 (1986); Inland Oil and Transport Co. v. United States, 600 F.2d 725, 727 - 28 (8th Cir.), cert. denied, 444 U.S. 991 (1979).

## III. Discussion

In employment discrimination cases for race and age, where the Plaintiff seeks to prove discriminatory treatment via inferential, rather than direct, evidence, the Court applies the McDonnel Douglas burden-shifting analysis. Whitley v. Peer Review Sys., 221 F.3d 1053, 1055 (8th Cir. 2000); Hopper v. Hallmark Cards, 87 F.3d 983, 988 (8th Cir. 1996). The plaintiff "must prove that she is a member of a protected class, was qualified for the position she held, and suffered some adverse employment action under circumstances giving rise to an inference of discrimination." Id. For a case of age discrimination under 29 U.S.C. § 633a, Plaintiff must similarly prove that she (1) is within the protected age group; (2) met all applicable job qualifications and legitimate employer expectations; (3) suffered a discharge or other adverse employment action and (4) was replaced by a younger worker. Johnson v. Runyon, 137 F.3d 1081, 1082 (8th Cir. 1998). Once Plaintiff has shown the above factors, the employer then must put forth a "legitimate, nondiscrimnatory" reason for its actions. Id. If the employer provides such a reason, Plaintiff then bears the burden of showing that the stated reason is a mere pretext for

discrimination. Id.

### A. Adverse Employment Action

Plaintiff first argues that, as a federal employee, she alleges a claim under 42 U.S.C. §2000e-16 which does not require, unlike 42 U.S.C. §2000e-2, Plaintiff to demonstrate that she suffered an adverse action. While 2000e-16 does prohibit "all personnel actions affecting employees," in determining what is a "personnel action" under the statute, other courts have "analogized the inquiry to that under Title VII's provisions proscribing conduct by private employers." Vester v Henderson, 178 F Supp 2d 594 (2001, MD NC); Brown v. Brody, 199 F.3d 446, 452 (D.C. Cir. 1999) ("Despite the difference in language between [the Title VII provisions governing private and federal employers], we have held that Title VII places the same restrictions on federal and District of Columbia agencies as it does on private employers. . .").

The 8th Circuit has similarly applied the McDonnel Douglas framework and its adverse employment requirement in cases under 42 U.S.C. §2000e-16 and 29 U.S.C. § 633(a) claims. McKay v. United States DOT, 340 F.3d 695, 700 (8th Cir. 2003) (applying the framework, including the requirement of an adverse employment action, where plaintiff seeks to prove age discrimination by indirect evidence under § 633(a)); Box v. Principi, 442 F.3d 692, 696 (8th Cir. 2006) (applying the framework in a race discrimination case brought by a former federal employee). Plaintiff thus must show that she suffered some adverse employment action.

"An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage." Wedow v. City of Kan. City, 442 F.3d 661, 671 (8th Cir. 2006), *quoting* Sallis v. Univ. of Minn., 408 F.3d 470, 476 (8th Cir. 2005). Material employment disadvantages include "'termination, reduction in pay or benefits, and changes in employment that significantly affect an employee's future career prospects." Okruhlik v. Univ. of Ark., 395 F.3d 872, 879 (8th Cir. 2005).

Plaintiff was assigned to the Funding Team rather than the Management Team. The key difference in this assignment was in her job responsibilities. Neither assignment presented Plaintiff, or any of the HSYSs, to new or different responsibilities, it merely narrowed the employee's area of focus. "A materially adverse action must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities." Box v. Principi, 442 F.3d 692, 696 (8th Cir. 2006)(internal citations omitted); Higgins v. Gonzales, 481 F.3d 578, 585 (8th Cir. 2007),

("[A] job reassignment involving no corresponding reduction in salary, benefits, or prestige is insufficient to establish an adverse employment action"). Given that Plaintiff's grade, job title, benefits, work space, location, and co-workers did not change, the Court finds that the assignment to the Funding Team was not an adverse employment action.

Accordingly, the Court grants summary judgment as to Plaintiff's claim that Defendant discriminated against her on the basis of race and age in assigning her to the Funding Team.

### B. Pretext

Defendant states that it did not hire Plaintiff for either of the open GS-13 positions because Plaintiff was unable to explain the PRISM program and state the four corners for Early Head Start. Plaintiff thus has the burden to present evidence showing that Defendant's stated reason is a pretext for discrimination. Arnold v. Nursing & Rehab. Ctr. at Good Shepherd, LLC, 471 F.3d 843, 846 (8th Cir. 2006). Plaintiff, however, failed to respond at all to Defendant's stated reason and has not presented any evidence that "racial animus lies behind [Defendant's] neutral explanation" of its actions. Id. at 847. Accordingly, summary judgment is granted as to Plaintiff's claim that Defendant discriminated on the basis of race and age in its selection decision for the GS-13 positions.

### IV. Conclusion

The Court hereby GRANTS summary judgment in favor of Defendant as to both of Plaintiff's counts of discrimination. The case is hereby DISMISSED.

Date:   August 17, 2007                              /s/ Dean Whipple
                                                          Dean Whipple
                                                  United States District Judge